```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Ms. Spruill-Boone, individually and on
behalf of all others similarly situated,

                Plaintiff,              CV-04-5568 (CPS)

   - against -                          MEMORANDUM OPINION
                                        AND ORDER
Summit School Inc., and Summit
Children's Residence Center Inc.,

                Defendants.

----------------------------------------X
```

SIFTON, Senior Judge.

Plaintiff, Spruill-Boone, individually and on behalf of others similarly situated, brings this action against defendants, Summit School, Inc. (the "School") and Summit Children's Residence Center, Inc., (the "Residence Center") alleging that defendants failed to pay her overtime for hours worked in excess of forty hours per week, in violation of the Fair Labor Standards Act ("FLSA") §7(a)(1), 29 U.S.C. §207(a)(1) and the New York Wage Regulations, N.Y.C.R.R. Labor Section 138 et seq. Now before this Court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and plaintiff's motion for collective action notification pursuant to FLSA §216(a), 29 U.S.C. §216(b). For the reasons set forth below the defendants' motion for summary judgment is granted and the plaintiff's motion for collective action notification is denied.

BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 statements and submissions in connection with this motion. Disputes are noted.

The Residence Center is a New York not-for-profit corporation that operates a residence center for emotionally handicapped high school age adolescents, primarily from New York State.

The School is a not-for-profit corporation operating a highly specialized school program for teenagers of high school age who have been diagnosed as emotionally disturbed and who may have other medical conditions such as Tourettes syndrome.

*Representations by Defendants of their Joint Relationship*

The two defendants use the same advertising materials and a joint logo.[1] Their joint website describes the School and Residence Center as "an integrated educational and treatment program." The defendants share an address and telephone number. Each defendant's tax return lists the other as an "affiliate," although the two organizations file separate tax returns.

*Administration of the Defendant Corporations*

Each of the corporations is run by its own Executive Director. Dr. Bruce Goldsmith, the School's Executive Director is

---

[1] Defendants have not challenged the factual allegations made in plaintiff's 56.1 statement. Accordingly, those facts are deemed true for the purposes of this motion. Local Rule 56.1(c)(Statements in a party's 56.1 statement "will be deemed to be admitted unless controverted.")

also the Associate Director of the Residence Center. Although each organization has a separate board of directors, both boards are constituted by an identical group of directors. Moreover, the same top managers run both organizations.

According to the defendants the Residence Center receives its funding from the various counties where the families of its residents reside and the School receives its funding from the various school districts within which the families of its students reside. The organizations also receive funding from each other. For example, the Residence Center advances monies to the School with no specific terms for repayment. The School recently guaranteed a $3.5 million dollar line of credit to the Residence Center.

*Facilities of the Defendant Corporations*

The Residence Center is located on a campus it owns in Upper Nyack, New York. The School has three separate campuses in New York State. One of these campuses is shared with the Residence Center. At the Upper Nyack campus, the School leases space in three buildings from the Residence Center. The School buildings and the Residence buildings are interspersed throughout the campus. Both entities use the same suite of administrative offices.

*Operations of Defendant Corporations*

The Residence Center operates on a 24-hour, 7-days-a-week,

365-days-a-year basis. Students are enrolled in the School from 8:45 a.m. to 2:45 p.m., Monday to Friday, for an approximately 180 day school year from September to June. Students may also participate in a summer program of an additional 39 days.

Although a number of employees have held simultaneous positions at the Residence Center and the School, staffing of the employees at the School and Residence Center is separate. Applicants applying to work at the School or the Residence Center must apply through separate processes, each with its own hiring standards. An applicant is evaluated for each job by different managerial personnel, who consider the applicant's qualifications for the specific positions in question. An applicant hired for a position with one of the defendants will not necessarily be hired by the other defendant. Moreover, an applicant offered positions with both defendants is under no obligation to accept both, and may choose to accept only one position.

An individual who is employed by both defendants is supervised and evaluated by separate supervisory staff at the School and at the Residence. Employees concurrently employed by the School and the Residence Center are never transferred from a position at the School to one at the Residence, and vice versa, during the course of the business day. Concurrently employed individuals receive separate paychecks from each defendant. However, the defendants do share a common payroll clerk who

administers separate payrolls for each entity. Paychecks from both defendants are administered through a separate payroll company, ADP.

*Defendants hire Plaintiff and Her Husband*

Plaintiff's husband, Dean Boone, was employed at the school from 1993 to 2002. He was employed at the residence center from 2000 to 2002.

Plaintiff was hired by the school sometime prior to July 2000. Defendants state that plaintiff began her employment with the School on July 31, 2000. She held that position until November 1, 2004. According to the defendants, plaintiff was hired by the Residence as a residential counselor on July 1, 2001, and held that position until September 2001 when she terminated her employment with the Residence. Plaintiff maintains that she began working at both the School and the Residence Center in September 1999.

Plaintiff began her employment at the School in a "one-to-one" position. She was supervised by Ann D'Andre, a teacher at the School. In her second and third years at the School plaintiff was a teacher's aid. She continued to be supervised by Ann D'Andre. At the Residence Center plaintiff was supervised by Chris Small. Plaintiff had no obligation to report to Chris Small with respect to her duties at the School and no obligation to report to Anne D'Andre with respect to her duties at the

Residence Center. Plaintiff was never asked to leave her position at the Residence Center to go to work at the School. Defendants allege that she was also never asked to leave her position at the school and go the Residence Center.[2]

*Department of Labor Investigation*

In late 2002 the School was audited by the U.S. Department of Labor ("DOL") for its compliance with the provisions of FLSA for the period from July 1, 2000 to June 31, 2002. The DOL informed the defendants that "the two firms were considered one enterprise by our standards," (Abrams Decl. Para. 2) and that accordingly, any employee who had worked a combined total of more than forty hours a week for the defendants was entitled to overtime. Defendants state that they fully cooperated with this investigation, as a result of which ten employees were identified as being entitled to overtime. Plaintiff alleges that defendants did not fully cooperate with the investigation because they identified only ten employees when in fact, many more were entitled to overtime payments.

Thereafter,[3] defendants' CPA, Ken Gach, provided DOL with a

---

[2] Plaintiff disputes this fact, because she states that her deposition testimony, on which defendant bases this statement, supports this assertion only in regard to her first year of employment. Plaintiff does not however assert that she was ever asked to leave her position at the School and go to the Residence Center.

[3] There is no date on the letter from Ken Gach to DOL. A date of receipt appears to have been stamped on the letter. Though not entirely legible, it appears to state that the letter was received on November 21, 2002.

spreadsheet containing all combined monthly hours for teaching assistants, childcare workers and all other non-exempt Summit employees. Using that spreadsheet a list of ten employees entitled to back wages for unpaid overtime was compiled.[4]

By letter dated January 3, 2003, Assistant District Director of DOL, Sonia C. Rybak, informed Dr. Goldsmith that in DOL's view there had been a FLSA violation concerning the ten named employees listed on the attached DOL Summary of Unpaid Wages, Form WH-56 ("Form WH-56"). Plaintiff's husband, Dean Boone, was listed on the WH-56. Plaintiff was not. Although plaintiff knew that DOL was investigating her husband's overtime claim against the school, she never complained to anyone at the school about an overtime claim on her own behalf. Her husband spoke to DOL several times about his claim, but never discussed any potential claims of his wife.

By letter dated January 21, 2003, Dr. Goldsmith responded to the January 3rd letter requesting additional time to seek the funding required to pay the back wages from the New York State Office of Children and Family Services ("OCFS").

In a letter dated April 30, 2003 Ms. Tyback requested that

---

[4] It is unclear who ascertained that ten employees were eligible for back wages overtime pay. The final DOL report, stated only that "[t]ime records were compared against this base number [of hours] and a list compiled of employees who worked in excess of those hours," Abrams Decl. Ex. A, but did not specify whether DOL or the defendants compiled the list. In his deposition, plaintiff's husband stated that Summit picked the names on the list on the basis of which employees were "the people that wouldn't say anything or question anything." Boone Dep. Test. 17, Abrams Decl. Ex. C.

Dr. Goldsmith sign a "Waiver of the Statute of Limitations," "due to the length of time that has transpired since our January 3, 2003 letter to you regarding the payment of back wages." On May 7, 2003 Dr. Goldsmith signed the waiver, providing in relevant part that:

> In consideration of the agreement by the U.S. Department of Labor to withhold commencement of a civil action in the United States District Court to resolve questions of alleged violations of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 201 et. seq.) disclosed in investigation of Summit School, Inc. and Summit Children's Residence, Inc., the duly authorized undersigned does hereby waive all rights and defenses which may be available by virtue of the Statute of Limitations contained in Section 6 of the Portal to Portal Act, 29 U.S.C. 255.
>
> Employer further agrees to the tolling of the Statute of Limitations from the date this document is executed until (May 1, 2004)

Thereafter, defendants agreed to make the delinquent overtime payments to the employees listed in Form WH-56, pursuant to a "Back Wage Compliance and Payment Agreement" ("installment agreement") executed by Ms. Ryback and Dr. Goldsmith. That agreement specified in relevant part, as follows:

> This agreement is entered into 06/02/2003 by and between Elaine L. Chao, Secretary of Labor, United States Department of Labor, (hereinafter referred to as the "Secretary") and dba Summit School (hereinafter referred to as "the employer"_.
>
> The Secretary, through Investigator Bauer of the Wage and Hour Division, United States Department of Labor, conducted an investigation of the employer's business under the Fair Labor Standards Act. The main office of the employer is located at 339 North Broadway, Nyack, NY 10960. The investigation covered the employer's

operations from 07/1/2000 to 07/16/2002.

As a result of that investigation monetary violations were found resulting in 6 employee(s) due back wages in the amount of $33644.60.[5]

In order to resolve this matter, the parties stipulate and agree to the following:

The agreement then goes on to lay out the details of the installment payment plan via which defendants would pay back the back wages. It also provides that

The employer hereby waives all rights and defenses which may be available by virtue of statute of limitations, including but not limited to section 6 of the Portal-to-Portal Act (29 U.S.C. 255).

*Commencement by Plaintiff and her Husband of Suits against Defendants*

On August 23, 2003 plaintiff's husband, Dean Boone, commenced a lawsuit solely on his own behalf against the School and Residence, through his attorney David Abrams.

Sixteen months later, in December 2004, the School and Residence Center were formally served with the initial Summons and Complaint in the plaintiff's suit.

DISCUSSION

Jurisdiction

This Court has jurisdiction over the present action pursuant to 28 U.S.C. §1331, which creates jurisdiction over civil actions

---

[5] Ten employees were initially identified as being owed back wages. However, because four of the ten employees were owed only small amounts (totaling less than $3,000 for all four), defendants paid those four immediately, leaving only six employees to be paid under the installment plan. DOL Rep., Abrams Aff., Ex. A.

arising under federal law; 28 U.S.C. §1343, and 28 U.S.C. § 1367, which creates supplemental jurisdiction over claims arising under state law.

Summary Judgment Standard

A court must grant a motion for summary judgment if the movant shows that "there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elec. Inspectors, Inc. v. Village of East Hills*, 320 F.3d 110, 117 (2d Cir. 2003). A fact is material when it "might affect the outcome of the suit under the governing law." *Id*.

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). In order to defeat such a motion, the non-moving party must raise a genuine issue of material fact. Although all facts and inferences therefrom are to be construed in the light most favorable to the non-moving party, the non-moving party must raise more than a

"metaphysical doubt" as to the material facts. *See Matsushita*, 475 U.S. at 586; *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001). The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990). Rather, the non-moving party must produce more than a scintilla of admissible evidence that supports the pleadings. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968); *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003).

"The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

Defendants argue that summary judgment must be granted in their favor because the plaintiff's claims are time-barred by the statute of limitations and because the defendants are not "joint employers" under FLSA. Defendants also argue that plaintiff's pre July 2000 claims must be dismissed because she did no work for the defendants prior to that date. Finally, defendants argue that if plaintiff's federal claims are dismissed this Court should

decline to exercise jurisdiction over her state law claims.[6]

*Statute of Limitations*

The statute of limitations for a FLSA claim is two years for a non-willful violation and three years for a willful violation. 29 U.S.C. §255(a). A FLSA violation is willful if an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988). "Willfulness cannot be found where the employer acted negligently or assumed in good faith, but incorrectly, that its conduct complied with the FLSA." *El v. Potter,* 2004 WL 2793166, *5 (S.D.N.Y. 2004). The plaintiff bears the burden of proving that the defendants' conduct rises to the level of a willful violation. *Herman v. RSR Sec. Services Ltd.,* 172 F.3d 132, 141 (2d Cir. 1999). There has been no allegation in this case that the employer's behavior was willful, and plaintiff does not dispute that the two year statute of limitations is applicable.

The complaint in this case was filed on December 21, 2004. Therefore, the plaintiff's claims would normally be limited to

---

[6] At oral argument defendant argued for the first time that plaintiff's claims were barred because her "consent to sue," filed in November 2005, was untimely. 29 U.S.C. 216(a) provides that an employee may bring suit to recover unpaid overtime compensation on behalf of himself "and other employees similarly situated," but that, " no employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." However, I need not decide whether a named plaintiff need file such "consent to sue" or whether plaintiff's consent to sue was timely filed, because, as discussed in the body of this opinion, plaintiff's claim is dismissed on other grounds.

violations occurring after December 21, 2002. Plaintiff argues however, that the Waiver of the Statute of Limitations signed by defendants on May 7th and the waiver provision of the Installment Agreement "unmistakably waives the statute of limitations and further tolls the statute of limitations until May 1, 2004." (Pl. Mem. Law at 5.) Accordingly, plaintiff argues that the "statute of limitations started running no earlier than May 1, 2004" so that "any claim brought before May 1, 2006 would be timely." Id.

The Waiver of the Statute of Limitations specified that it tolled the statute of limitations from May 7, 2003 until May 1, 2004. Plaintiff argues that under this tolling the statute of limitations does not begin to run until May 1, 2004. However, the tolling of the statute of limitations does not reset the statute of limitations to begin running from the end of the tolled period. Rather, the period for which the statute of limitations is tolled is simply excluded from the calculation of the statute of limitations. *See e.g.*, *Greyhound Corp. v. Mount Hood Stages, Inc.*, 437 U.S. 322 (1978); *Shimazaki Communications, Inc. v. American Tel & Tel Co.*, 647 F.Supp 10 (S.D.N.Y. 1986). In the present case, the statute of limitations began to run in September 2001 when plaintiff last worked for both defendants. Assuming the May 7th waiver applied to plaintiff's claim, the statute of limitations was tolled from May 7, 2003 to May 1, 2004. The statute of limitations then began to run again in May

2004, and ran for eight more months before plaintiff filed this suit in December of 2004. Even subtracting the twelve tolled months from the forty month period between September 2001 when plaintiff last worked for both defendants and December 2004 when plaintiff filed suit, plaintiff still did not bring her suit within the 24 month statute of limitations.

Plaintiff next argues that defendants waived any statue of limitations defense in the May 7th Waiver and in the Installment Agreement. Defendants argue that these waivers were limited to the claims of those employees named in the DOL investigation and accordingly, do not apply to plaintiff. The May 7th waiver specified that it was made in consideration of DOL's agreement to withhold commencement of a civil action "to resolve questions of alleged violations [of FLSA] disclosed in investigation" of the defendants. The Installment Agreement specified that it was made "[a]s a result of" the investigation finding "6 employee(s) due back wages in the amount of $33644.60" and that "in order to resolve this matter, the parties stipulate and agree" in relevant part that "the employer hereby waives all rights and defenses which may be available by virtue of statute of limitations, including but not limited to section 6 of the Portal-to-Portal Act (29 U.S.C. 255)."

"[I]f a contract is straightforward and unambiguous, its interpretation presents a question of law for the court to be

made without resort to extrinsic evidence." *LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 2d Cir. 2005)(citations omitted)). Furthermore, "[c]ontracts must be read as a whole, and if possible, courts must interpret them to effect the general purpose of the contract." *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005).

In the present case, the May 7th waiver was made "in consideration of" the withholding of suit as to those employees "disclosed in [the DOL] investigation." Thus, the statute of limitations waiver applies only to the claims of those employees. Similarly, because the Installment Agreement was made "as a result of" the DOL investigation finding six employees due back wage and because defendants waived the statute of limitations of defense "in order to resolve *this* matter" (emphasis added), the Installment Agreement waiver only applies to those employees specifically named in the DOL investigation.[7] A limited waiver makes sense in both of these contexts. The May

---

[7] Plaintiff's reliance on *Herman v. Hogar Praderas De Amor, Inc.*, 130 F.Supp.2d 257 (D.P.R. 2001) is misplaced. First, this court is not bound by a district court decision from Puerto Rico. Moreover, the facts of that case are distinguishable. In that case, following a DOL investigation, as part of an attempted settlement, the defendant signed a general statute of limitations waiver. The waiver, unlike the one in this case, did not specify that the waiver was provided in order to resolve a matter concerning specific employees. Rather, it stated generally that it was provided "in consideration of the withholding . . . of the institution of legal proceedings . . . to resolve the question of alleged violations of the Fair Labor Standards Act." *Id.* at 261-262. Furthermore, while the *Herman* court did apply this waiver to employees hired after the defendant signed the waiver, it did so without giving any specific consideration to the issue of whether the waiver applied to such employees. Rather, the discussion of the waiver in that case focused on whether the waiver was knowing, a concern not at issue here.

7th waiver appears intended to protect the claims of those employees who chose to wait to file private suits until the DOL had completed negotiations with defendants on behalf of the employees. Similarly, the Installment Agreement waiver was intended to preserve the claims of employees who chose not to bring individual suit (but to rely instead on the payment plan agreed to in the installment agreement) in the event defendants failed to make those payments. Plaintiff was aware of defendants overtime wage violations. Unlike the six employees awaiting payment, she had no reason to delay bringing suit if she believed she was entitled to overtime pay. Defendants' waiver of its statute of limitations defense does not apply to her. Accordingly, her failure to bring suit within the statute of limitations period is unexcused and her suit is dismissed.[8]

*State Law Claims*

Because plaintiff's federal law claim is dismissed I decline to retain jurisdiction over the state law claim. *Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir. 1994); *Baylis v. Marriott Corp.,* 843 F.2d 658, 664-65 (2d Cir.1988); *Adee Motor Cars, LLC v. Amato,* 388 F.Supp.2d 250, 255 (S.D.N.Y. 2005)("In general, where the federal claims are dismissed before trial, the state

---

[8] Because I decide defendants' motion for summary judgment on this ground, I do not address the remainder of their arguments in support of summary judgment on the federal claim.

claims should be dismissed as well"). Accordingly, plaintiff's state law claim is dismissed without prejudice.

*Collective Action Notification*

Because plaintiff's claims are dismissed, plaintiff's motion for collective action notification is denied.

## CONCLUSION

For the reasons set forth above defendants' motion for summary judgment is granted and plaintiff's motion for collective action notification is denied.

The Clerk is directed to furnish a filed copy of the within to the parties.

SO ORDERED.
Dated :   Brooklyn, New York
          April 24, 2006

                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge